## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALVIN YAX,

      Plaintiff,
                                     Case No. 19-11561
                                     Hon. Denise Page Hood

v.

FCA CHRYSLER AUTOMOBILES,

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#69]

## I.  INTRODUCTION

On October 11, 2019, Plaintiff filed a four count Amended Complaint alleging

that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101, *et seq*., by discriminating against Plaintiff (Count I), failing to reasonably

accommodate Plaintiff's disability (Count II), and retaliating against Plaintiff for

requesting a reasonable accommodation and filing a charge with the EEOC (Counts

III and IV, respectively).  On May 20, 2020, the only remaining Defendant, FCA

Chrysler Automobiles ("Defendant"), filed a Motion for Summary Judgment. ECF

No. 69. The Motion has been fully briefed, and a hearing was held.  The Court grants

in part and denies in part the Motion for Summary Judgment. For the reasons that

follow, Count IV of Plaintiff's Amended Complaint is dismissed; Counts I-III remain.

## II.    STATEMENT OF FACTS

Defendant has employed Plaintiff as a journeyman electrician since 1996.  In 2004, Plaintiff fell while working and injured his knee. He visited Defendant's medical department and followed-up with his personal physician, other doctors and physical therapists. He was diagnosed with a medial meniscus tear and osteoarthritis and advised that he would "have problems off and on with his knee and [would] probably…require total knee replacement in the future." Plaintiff has continued to have pain and instability of the left knee that has required reoccurring pain prescriptions, stem cell procedures and therapy. Plaintiff has testified that the disability has "diminished" his "standards of living." ECF No. 74, Ex. 30 at 154.

Beginning in 2004, Plaintiff sought an accommodation of not climbing ladders, which seemingly was recognized but not formally memorialized.  Plaintiff regularly utilized a "manlift" machine readily available in the plant and the aid of a partner to complete elevated work; he was entitled to access both the manlift and his partner to do that work, with or without a disability. ECF No. 74, Ex. 32 at 47-48. Plaintiff's supervisors and coworkers testified that there are very few jobs that required an employee to use a ladder rather than a manlift or a scissor lift. ECF No. 74, Ex. 31 at 102; Ex. 32 at 182.

Defendant maintains a chart titled "Restrictions for an Individual" that lists an

2

employee's restrictions. This listing is available to managers and supervisors on the plant computers. ECF No. 74, Ex. 32 at 63-64, 75-76; *see also* ECF No. 74, Exs. 20 and 21. Plaintiff's designation was and is "no climbing." The medical department keeps more detailed records to which the managers do not have access under HIPPAA. ECF No. 74, Ex. 32 at 75; Ex. 33 at 89; Ex. 37 at 66-67.  One of those documents is titled "Encounters For an Individual Employee," ECF No. 74, Ex. 29, and it was never made available to the decision makers in this case. ECF No. 74, Ex. 32 at 75; Ex. 33 at 89; Ex. 37 at 66-67.

After Plaintiff's 2004 knee injury, Defendant placed various restrictions into Plaintiff's record, almost all of which were due to his knee injury and would expire periodically. Between 2004 and the date of his termination in 2017, Defendant frequently applied a "No Climbing" restriction to Plaintiff in the "Encounters of an Individual Employee" record, although those restrictions periodically expired. ECF No. 74, Ex. 20. Throughout that period, Defendant permitted Plaintiff to work with or without an active "no climbing" restriction in Plaintiff's "Encounters of an Individual Employee" record. As the Supervisor of Defendant's Labor Relations (the equivalent of human resources for hourly employees) Hardy Wilson ("Wilson") explained:

> Q.    And as far as you know, the employee keeps working with the bad knee.

The restrictions expired. He hasn't bothered to go to the doctor because he's been accommodated. He just uses manlifts. All is well. He doesn't go get another restriction, and you don't follow up to see what he's doing; correct?

A.   Correct.

Q.   Okay. He just keeps working until, in this case, Spencer told him to go get a new restriction; is that your understanding?

A.   I believe so.

ECF No. 74, Ex. 33 at 105.

It is uncontested that, between 2004 and 2017, Plaintiff adhered to and Defendant accommodated a "no climbing" restriction, even when the restriction had lapsed. Plaintiff's last manager, Larry Spencer ("Spencer"), testified that there is no reason that a supervisor cannot informally, without a restriction, work with an employee who has a medical issue or restriction by simply having him do other tasks and not use his the injured joint as much. ECF No. 74, Ex. 32 at 66. Plaintiff states that, because he did not usually need an accommodation, he verbally made a request directly to his supervisors on an "as needed" basis. *Id.* at 124-25, 130.

At the time of the relevant events, Plaintiff worked at the Sterling Stamping Plant ("SSP") and had been working there since 2011.  In June 2016, Plaintiff provided Defendant with a note from his doctor, again recommending the restriction of "no climbing" because of Plaintiff's left knee. ECF No. 74, Ex. 24; Ex. 29 at 20.

The "no climbing" restriction was reflected in Defendant's database and was to remain in effect through July 29, 2016. Ex. 20; Ex. 21. No date was issued for Plaintiff to return to the plant doctor for a follow up, and Plaintiff continued working with his "no climbing" restriction after July 29, 2016. *Id.* Wilson testified this was consistent with Defendant's policy that allowed an employee to continue to work with an expired restriction until asked to renew it. ECF No. 72, Ex. 33 at 104-05.

In July 2017, Plaintiff directly reported to maintenance supervisor Kevin Miner ("Miner"), who reported to Spencer, the just-promoted Building and Facilities Maintenance Manager. According to Spencer, Plaintiff allegedly identified one assignment with which he was having difficulties due to his knee (although Spencer was unable to identify the specific assignment at his deposition). ECF No. 74, Ex. 32 at 69-71, 78, 109. Spencer demanded that Plaintiff "get his [restrictions]…on file." *Id.* at 69. Plaintiff obtained a doctor's note and as of July 13, 2017, was again listed as "no climbing." ECF No. 74, Ex. 20; Ex. 21; Ex. 25.

Miner testified that there was "friction" between Spencer and Plaintiff, and Miner did not think Spencer "was very fond of [Plaintiff]." ECF No. 74, Ex. 31 at 121, 124. According to Local 1264 Union President LaShawn English ("English"), once Spencer was promoted, "[Spencer] wanted to be [viewed] as one of the good old boys so [that] he [could] get in with the club, because he wasn't in." ECF No. 74, Ex. 34

5

at 75. English testified that Spencer created animosity on the plant floor and whenever there was an issue with him, he would reactively cut an employee's overtime. *Id*. English stated that Plaintiff "had no problem" vocalizing his opinions when he felt that Spencer "was wrong," and, in English's opinion, "anybody that was going to prevent [Spencer] from getting to the next level [and becoming a member of the "club"] would be[] a problem." *Id*.

Miner believed Spencer decided that he wanted Plaintiff gone and set out to terminate him, as reflected by Spencer telling Miner and at least one other of Defendant's employees that it would be a "cold day in hell [before] that fat fuck [Plaintiff] ever works for Chrysler again." ECF No. 74, Ex. 31 at 115; Ex. 35 at 51. Plaintiff was fired two months later, allegedly because Defendant could not accommodate Plaintiff's "no climbing" restriction and the lack of any other work being available for Plaintiff. Several persons testified that Plaintiff continued to perform fully as a journeyman electrician until the last day he actively worked for Defendant at SSP (September 12, 2017). ECF No. 74, Ex. 22 at 49-51; Ex. 31 at 21-22, 59-62, 67, 69, 71, 78, 95-96; Ex. 32 at 115.

On October 24, 2017, Plaintiff filed an EEOC Charge against Defendant, alleging disability discrimination and failure to accommodate under the ADA. ECF No. 74, Ex. 3. The EEOC found that there was "reasonable cause to believe that

[Defendant] violated the ADA. Specifically, that in September 2017, [Plaintiff] was denied a reasonable accommodation for his disability, at [Defendant's SSP] Sterling Heights, MI location, and was denied return to work, in violation of the ADA." ECF No. 74, Ex. 5. Three days later, on October 27, 2017, Defendant's independent medical examiner ("IME") conducted a sickness & accident ("S&A") evaluation. The IME concluded that Plaintiff was "physically capable of returning to his job duties as an electrician with the restriction of avoiding climbing long ladders" and "[t]he use of short ladders would be reasonable as a preventative measure and this restriction should hold for about 6 months. Other than that, he should be able to work without any other restrictions." ECF No. 74, Ex. 27.

Although Defendant's plant medical file on Plaintiff was updated on November 17, 2017 to reflect the IME's opinion, ECF No. 74, Ex. 29 at 23, Defendant continued to maintain that there was no work available for Plaintiff with his restriction (as reflected on a second PQX dated November 17, 2017). ECF No. 74, Ex. 18. That decision was in conflict with the statements of former Labor Relations Supervisor Sue Tyndall, who stated that "whatever the IME says, that's what we have to go by... If it says he's clear to work, then [we] can't stop him." ECF No. 74, Ex. 37 at 40. From September 18, 2017 through September 14, 2018, Defendant placed Plaintiff on medical leave with S&A benefits.

## III.   LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all

8

other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material.  *Anderson*, 477 U.S. at 248.

## IV.    ANALYSIS

### A.    Disability Discrimination and Failure to Accommodate Claims

"To recover on a claim for discrimination under the ADA, a plaintiff must show that he or she (1) is disabled (2) otherwise qualified to perform the essential functions of the position with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Co.*, 826. F.3d 885, 891 (6th Cir. 2016), citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). The definition of discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability …." *Fisher v. Nissan N.A., Inc.*, 951 F.3d 409 (6th Cir. 2020); *Kleiber v. Honda of Am. Mfg.*, F.3d 862, 868 (6th Cir. 2007). An individual is "otherwise qualified" if he "can perform the 'essential functions' of the job in question." *Estate of Mauro v. Borgess Med. Ctr.*, 137 F.3d 398, 402 (6th Cir. 1998) (citation omitted).

To establish a prima facie case of failure to accommodate under the ADA, Plaintiff must show that: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for his position, with or without reasonable accommodation; (3)

Defendant knew or had reason to know of his disability; (4) he requested an accommodation; and (5) Defendant failed to provide the necessary accommodation. *Judge v. Landscape Forms, Inc.*, 592 F.Appx. 403, 407 (6th Cir. 2014); *Steward v. New Chrysler*, 415 F.App'x 632, 641 (6th Cir. 2011).

Defendant argues that, in order to prove a discrimination claim (Count I) or a failure to accommodate claim (Count II) under the ADA, Plaintiff must show that he is disabled under the statute and that he can perform the essential functions of his job as an electrician, with or without an accommodation. Defendant contends that Plaintiff cannot demonstrate either of those required showings, and Plaintiff's claims must be dismissed as a matter of law.

A disability under the ADA is defined as: "a physical or mental impairment that substantially limits one or more major life activities...a record of such an impairment...or being regarded as having such an impairment." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019). Major life activities "include but are not limited to…performing manual tasks…walking, standing, lifting, bending...and working." *Ferrari*, 826 F.3d at 893. Under the 2008 amendments to the ADA, Congress indicated that the definitions of a "disabled person" and "substantially limits" are to be construed broadly in favor of expansive coverage. *Morrisey*, 946 F.3d at 299.  "To determine whether a disability substantially limits major life activities,

the regulations direct courts to compare the person claiming a disability to 'most people in the general population.'" *Hostettler v. College of Wooster*, 895 F.3d 844, 854 (6th Cir. 2018).

A plaintiff generally does not need to submit scientific, medical, or statistical proof to establish a substantial limitation, and "'[a]n impairment need not prevent, or significantly or severely restrict ... a major life activity' to be substantially limiting." *Morrisey*, 946 F.3d at 299. Whether an impairment substantially limits a major life activity is ordinarily a question of fact. *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir.1996) (considering whether plaintiff presented evidence to create a question of fact as to whether her bladder condition, including infections, substantially limits one of her major life activities"); *Knapp v. City of Columbus*, 192 F.App'x 323, 329 (6th Cir. 2006) (affirming dismissal of claims because plaintiffs' evidence did not create a triable issue of fact as to whether they were substantially limited in the major life activity of learning).

Plaintiff asserts that he has been disabled within the meaning of the ADA since December 2004. Plaintiff has submitted evidence that he has experienced and worked through a great deal of pain, and pain experienced when performing a major life activity is a consideration toward finding a disability.  Plaintiff testified he has repeatedly required pain management and inflammation medications for his knee.

11

ECF No. 74, Ex. 30 at 7-8, 105-06, 122-23, 170. *See also* ECF No. 74, Ex. 29 at 3-5, 8-9, 13-16.  A person may be substantially limited because their "impairment causes pain or fatigue that most people would not experience when performing that major life activity." *Morrissey*, 946 F.3d at 300.

Defendant's medical record maintained on Plaintiff, his doctor's notes provided to Defendant, and his continuous restrictions and accommodations since 2004 constitute evidence of medical proof that may establish a substantial limitation. ECF No. 74, Exs. 10, 11, 15, 16, 20-25, 29 at 6, 16 (on January 30, 2008, it was noted in Plaintiff's medical record: "…moved to machining…is having to walk a lot more and is now having pain in his knee again. He has a long-standing history of left knee problems…" and in January 2014, the nurse noted "[patient] had [past medical history] of left knee injury…States that knee replacement was recommended.").

The Court also notes that Plaintiff has testified: "[m]y…standards of living have been diminished because of my knee," ECF No. 74, Ex. 30 at 154, and his doctor offered the diagnoses of "osteoarthritis" and "medial meniscus tear." ECF No. 74, Ex. 10; Ex. 29 at 4.  Plaintiff stated that due to his knee he could no longer jog, cut the grass with a push mower, cut firewood, or handle the requirements of owning a home such as changing the floodlights on his roof, and he required a disability parking sticker at Defendant and used carts to avoid walking long distances at the plant. ECF

No. 74, Ex. 30 at 62-64,133, 154-56; Ex. 23; Ex. 29, at 8-9. Plaintiff's doctor also noted that Plaintiff's knee affected Plaintiff's major life activities and limited his ability to walk and inhibiting his ability to climb. ECF No. 74, Ex. 15; Ex. 30 at 131; *see* Pub. L. No. 110-325, §2(b)(4), 122 Stat. 3553 (2008) (rejecting T*oyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198 which included the requirement that an impairment's impact be "permanent or long-term" to qualify as a "substantial limitation").

For all of these reasons, the Court finds that there is a genuine dispute of material fact whether Plaintiff is disabled under the ADA.

Defendant argues that Plaintiff's disability discrimination claim fails because Plaintiff could not perform his essential job functions. Specifically, Defendant maintains that Plaintiff could not climb or do elevated work. When a plaintiff challenges a job function as being unessential to the job as a whole, the employer bears the burden of proving that the alleged unessential function is essential. *Monette v. Electronic Data Sys. Corp.*, 90 F3d 1173, 1184 (6th Cir. 1996); *see also Hamlin v. Charter Twp. of Flint*, 165 F3d 426 (6th Cir. 1999); *Dropinski v. Douglas Cty.*, 298 F3d 704 (8th Cir 2002) (employer who disputes claim that employee can perform essential functions of job must put forth evidence establishing those functions). Plaintiff asserts that Defendant has failed to meet its burden. The Court finds that

there is a genuine dispute of material fact whether Plaintiff could perform his essential job functions.

The essential functions of a job include "the fundamental job duties of the employment position the individual with a disability holds or desires." *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (internal quotations omitted) (citing 29 C.F.R. § 1630.2(n)(1)). A job function may be considered essential if:

1.  the position exists to perform the function;

2.  a limited number of employees are available that can perform it; or

3.  it is highly specialized.

*Id*. (citing § 1630.2(n)(2)). The inquiry into whether a job function is essential is a "highly fact specific" question that is to be "evaluated on a case-by-case basis by examining a number of factors." *Rorrer*, 743 F.3d at 1039; *Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000). The question generally is one not suitable for resolution on a motion for summary judgment. *Rorrer*, 743 F.3d at 1039 (quoting *Keith v. Cty. of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013); *see also Kiphart v. Saturn Corp.*, 251 F.3d 573, 585 (6th Cir. 2001).

The job description for the journeyman electrician position does not include any requirement regarding the climbing or the use of ladders, ECF No. 74, Ex. 8; Ex. 31 at 69-70, nor is there any reasonable basis for claiming that climbing or using ladders

constitutes an essential job function for a journeyman electrician.  Even if it was such a requirement, the record is replete with evidence that Plaintiff, with the same injured knee and multiple "no climbing" restrictions, performed the duties of an electrician between 2004 and 2017. *See, e.g.,* ECF No. 74, Ex. 31 at 61.  Plaintiff was not disciplined for or warned because of an inability to perform. ECF No. 74, Ex. 32 at 188; Ex. 33 at 152; Ex. 34 at 36.

The foregoing is supported by Miner's testimony that he maintained written daily "lineups" listing where in the plant each of his six direct reports were assigned, ECF No. 74, Ex. 31 at 9-10, 21-22, and Defendant produced lineups for 22 days between June and September 12, 2017 (Plaintiff was removed from duty at the SSP facility on September 13, 2017). ECF No. 74, Ex. 2.  Miner testified as to where Plaintiff was assigned and what job(s) he performed, stating that although Plaintiff had a formal "no climbing" restriction, Plaintiff was able to perform all of the essential functions of his job. ECF No. 74, Ex. 31 at 46, 136 (and 22, 24, 27-28, 30-44, 46-62, 130-141); Ex. 2 at 31.  Miner specifically testified as follows:

> Q. What are the essential or key functions of the job of a journeyman electrician? We've gone over lots of assignments, but I just need to know what the key job functions are, the essential job functions, the best that you can describe them here today in your own language.

> A. Install, decommission or repair anything requiring electricity.

> Q. Okay. And Al Yax did that. Am I correct on that?

15

> A.    Yes.

ECF No. 74, Ex. 31 at 69.   Miner testified that Plaintiff "was an exceptional electrician whose work was satisfactory." *Id.* at 91, 146. *See also* Ex. 34 at 48, 61 (English deposition).   Miner stated that Plaintiff's "no climbing restriction" was not an issue for Miner and was easily managed:

> A.    At that time I would give him jobs that didn't require him to climb a ladder.
>
> Q.    Well, there were very few jobs, as I understand, that you actually had to use a ladder instead of any of the other devices, manlifts, scissor lifts and so on; correct?
>
> A.    Yes.
>
> Q.    So, he could have -- the "no climbing ladders" would not have prohibited him from working in the plant; correct? You could have accommodated that and you did, or it just was done?
>
> A.    If the restriction was no climbing ladders --
>
> Q.    Right.
>
> A.    -- then my focus is, I do not put Al on a job that would require him to even think about a ladder.

ECF No. 74, Ex. 31 at 102-03.

Many persons have testified that Defendant's electricians work in teams of at least two in a myriad of jobs throughout the plant. ECF No. 74, Ex. 30 at 87-89; Ex. 31 at 26; Ex. 32 at 66-67.  This was for safety reasons, but it also meant that there was

always a job on which Plaintiff could be placed.  As Plaintiff's regular partner since

2013, Tim Cameron, a journeyman electrician at Defendant for 20 years, averred:

> (a)   "Alvin Yax and I had a very good working relationship and during our partnership and I never had any problems with Alvin's performance, abilities and/or his "no climbing" restriction."
>
> (b)   "For the duration of the time that I have known Alvin Yax, he has completed the essential functions of his job at FCA."
>
> (c)   "Alvin Yax's 'no climbing' restriction can easily be accommodated for 99.9% of a journeyman electrician's duties."

ECF No. 74, Ex. 7.  Plaintiff argues that he has been "accommodated" for six years

by working but not being required to perform any functions of his job that required

climbing.

For these reasons, the Court finds that there is a genuine dispute of material fact

whether Plaintiff was able to perform an essential job function.

Defendant argues that, even if its personnel allowed such excessive

accommodations in the past, it is nor relevant to the Court's analysis.  Defendant

asserts that, once an employer realizes that an employee is not fully performing all of

his essential functions, the employer is not required to ignore that fact simply because

it was previously disregarded by less diligent supervision, as the ADA does not dictate

that the employer continue to accommodate a plaintiff in the same manner. *Dabney*

*v. Ohio Dep't of Admin. Servs.*, No. 2:04-CV-528, 2006 WL 745176, at *9 (S.D. Ohio

Mar. 22, 2006) (citations omitted) ("If an employer chooses for whatever reason to bend over backwards to accommodate an employee, going beyond what is required under ADA, it shouldn't be punished for its efforts. … Courts should not discourage employers from providing accommodations that may be beyond the scope of ADA requirements."); *see also Vande Zande v. Wisconsin Dept. of Administration,* 44 F.3d 538 (7th Cir.1995); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997) (an employer's decision to cease making accommodations related to essential functions of an employee's position does not violate the ADA)*; Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d 661, 671 (3d Cir. 1999) (the decision to discontinue accommodations that exceed the requirements under the ADA does not establish a cause of action under the ADA).

In *Dabney*, the plaintiff worked as a construction compliance officer. After injuring herself on the job, she was restricted from walking around construction sites or traveling beyond a 50-mile radius. For eight years, the management team in place at that time only required her to perform those aspects of the job that did not require travel, and did not require her to perform field audits. A new management team, however, determined that the accommodation was not feasible because it prevented her from performing audits, requiring others to pick up that responsibility. The plaintiff in *Dabney* filed suit alleging failure to accommodate. The court noted that the

18

ADA requires the restructuring of only "non-essential duties or marginal functions of a job." *Id.* at *8. Because the plaintiff could not physically get to the construction site in order to conduct the audits, the court held that she was not performing all of the essential functions of her job, granting summary judgment. *Id.* at *9.

Defendant argues that the ability to climb and access elevated work is essential to the job of an electrician at a manufacturing plant, just as the ability to drive and walk a construction site are essential to the job of a construction auditor. Defendant contends that it did not violate the ADA by refusing to remove Plaintiff's essential job functions that required climbing or elevation-type work.

The Court finds that there is evidence in the record that counters Defendant's contentions.  First, as Cameron stated, there is almost nothing that the electricians do that would require the use of a ladder.  Second, although Plaintiff's physician indicated that Plaintiff should not do elevated work, the IME only prohibited the use of "long ladders" and Plaintiff and others have testified that he could perform (most of) the elevated work with the manlift or scissors lift.  Third, Spencer was asked, "Do you personally know of any essential job function that [Plaintiff] was unable to perform? Or strike that.  That he did not perform?"  Spencer responded, "No, I don't." *Id*. at 205.

The Court finds that there is sufficient evidence to support Plaintiff's disability

discrimination and failure to accommodate claims and deny Defendant's summary judgment motion on those claims.

Defendant also argues that summary judgment is warranted as to Plaintiff's failure to accommodate claim based on events prior to October 2018. Defendant claims that Plaintiff impeded the interactive process by refusing to return medical information that Defendant needed in order to ascertain whether he had a disability as defined by the ADA and whether he could be reasonably accommodated. Defendant notes that it sent Plaintiff the Medical Inquiry Form for a Reasonable Accommodation Request in December of 2017 (when Plaintiff began seeking a permanent ADA accommodation), as opposed to his previous requests for temporary, intermittent restrictions. Defendant states that Plaintiff forwarded the request to his Union Steward on December 26, 2017, joking that the mail carrier had neglected to have him sign and return the certified mail receipt. But Plaintiff did not provide the requested information to Defendant, ECF No. ECF No. 69, Ex. 19, and did not have his health care provider complete and return the form until nearly a year later, after Defendant the information again. ECF No. 69, Exs. 21-22.

Defendant asserts that an employee who fails to participate in the interactive process in good faith cannot thereafter claim that the employer failed to accommodate him. Citing *Harvey v. Am.'s Collectibles Network, Inc.*, No. 3:09-CV-523, 2011 WL

182864, at *8 (E.D. Tenn. Jan. 20, 2011); *see also, Brumley v. United Parcel Serv.,
Inc.*, 909 F.3d 834, 840 (6th Cir. 2018) (a party fails to engage in the interactive
process in good faith when he fails to provide requested information during the
process); *E.E.O.C. v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1096 (6th Cir. 1998)
(same).

The Court finds that there is evidence that Plaintiff' made requests for a
reasonable accommodation during his employment and after he was placed on leave.
Plaintiff testified that he requested accommodations on an "as needed" basis, directing
them either to his partner or to his supervisors Kevin Miner and Larry Spencer. ECF
No. 74, Ex. 30 at 123-25, 130 ("if I needed an accommodation, I would let Spencer
know."). According to Plaintiff, his supervisors were aware "that [he]
had…restrictions from the very beginning [of his employment]," and they would tell
him to "[d]o what you can do. If you need help, let me know." *Id*. at 135-36, 138.
Plaintiff's requests for an accommodation also were made after September 12, 2017.
ECF No. 74, Exs. 13, 14.

Once an employee requests a reasonable accommodation, "the employer has a
duty to engage in an 'interactive process' to 'identify the precise limitations resulting
from the disability and potential reasonable accommodations that could overcome
those limitations.'" *Mosby-Meachem v. Memphis Light, Gas &Water Div.*, 883 F.3d

595, 605 (6th Cir. 2018). The employer must demonstrate that providing the proposed

accommodation would impose an undue burden on them. *Kleiber*, 485 F.3d at 870.

The inquiry focuses on the hardships imposed by plaintiff's proposed accommodation

in the context of the particular employer's operations. *Keith*, 703 F.3d at 927 (citations

omitted); *Deister*, 91 F.Supp.3d at 922–23.

Plaintiff asserts that Defendant intentionally ignored its obligation to engage in

an interactive process with Plaintiff to identify his precise limitations and any possible

accommodations.   Plaintiff opines that Defendant's stonewalling constitutes an

independent violation of the ADA, as its abject failure to reasonably respond to

Plaintiff's requests amounts to a constructive denial of them and evidence of bad faith.

> This Court and our sister circuits have identified several situations that
> may indicate a failure to participate in the interactive process in good
> faith. Failing to discuss a reasonable accommodation in a meeting in
> which the employer takes an adverse employment action against an
> injured employee may demonstrate a lack of good faith. *EEOC v.
> Chevron Phillips Chem. Co.*, 570 F.3d 606, 622 (5th Cir. 2009).
> Similarly, failing to assist an employee in seeking an accommodation
> may suggest bad faith. *Canny v. Dr. Pepper/Seven-Up Bottling Grp.,
> Inc.*, 439 F.3d 894, 902 (8th Cir. 2006).

*Rorrer*, 743 F.3d at 1040-41.  *See also Mobley v. Miami Valley Hosp.*, 603 Fed.Appx.

405, 414 (6th Cir. 2015).  Plaintiff states that his inadvertent failure to return medical

information to Defendant in December 2017 does not excuse Defendant.  Plaintiff

states that Defendant did not in good faith participate in the interactive process

because it did not do so prior to this time, specifically before the adverse employment action occurred, and/or after December 2017, once it did not hear back from Plaintiff.

For the reasons stated above, the Court denies Defendant's argument that it is entitled to judgment as a matter of law with respect to Plaintiff's failure to accommodate claim for the period after October 2018.

## B.    Retaliation Claims

To establish a prima facie case of retaliation, Plaintiff must show that "(1) [he] engaged in activity protected under the ADA; (2) [Defendant] knew of that activity; (3) [Defendant] took an adverse action against [P]laintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer*, 743 F.3d at 1046 (citing *A.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)).

### 1.    S&A Leave

Defendant believes Plaintiff is alleging that Defendant retaliated against him for requesting an accommodation by "refusing to accommodate Plaintiff's known disability," thereby placing him on S&A leave.  Defendant argues that Plaintiff's retaliation claim must fail because it cannot be premised on a failure to accommodate. *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F.Supp.3d 1012, 1037–38 (N.D. Ill. 2016); *Denoewer v. Union Cty. Indus.*, No. 2:17-CV-660, 2020 WL 1244194, at *8 (S.D. Ohio Mar. 16, 2020).

Plaintiff counters that the adverse action he relies upon is that he was "terminated" two months after he sought an additional accommodation; not that he was not accommodated. Plaintiff contends that this was the first accommodation he had sought under Spencer, who he claims was clearly hostile to the concept of accommodating a disability. Plaintiff states that he engaged in protected activity by repeatedly requesting an accommodation. Citing *Reeder v. Cty. of Wayne*, 177 F.Supp.3d 1059, 1081 (E.D. Mich. 2016); *Hurtt v. Int'l Servs., Inc.*, 627 Fed.Appx. 414, 422 (6th Cir.2015); *Applewhite v. FCA US LLC*, No. CV 17-11132, 2019 WL 6894229, at *6 (E.D. Mich. Dec. 18, 2019). Plaintiff argues that Defendant abruptly stopped its accommodation of Plaintiff in mid-September 2017, two months after Spencer learned of Plaintiff's requests. ECF No. 74, Ex. 32 at 109; Ex. 30 at 123-25. Relying on *Gibson v. Cty. of Presque Isle*, No. 15-CV-12135, 2016 WL 4073500, at *5 (E.D. Mich. Aug. 1, 2016) ("[This] Circuit has held that, generally, a lapse in time of less than three months is sufficient, without more, to establish a causal connection between protected activity and an adverse employment action."); *A.C. ex rel. J.C.*, 711 F.3d at 699; *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that three-month span is sufficient to alone establish causal connection).

The Court finds that the timing of Spencer's refusal to allow Plaintiff to continue working in the same manner he had for more than 10 years, which occurred

24

within months of him being asked, is sufficient to create a genuine dispute of material fact with respect to Plaintiff's retaliation claim for requesting accommodation (not for not getting an accommodation).

> 2. *EEOC Filing*

Count IV of Plaintiff's First Amended Complaint alleges that Defendant retaliated against him for filing a Charge of Discrimination with the EEOC. After Defendant argued that Plaintiff's retaliation claim must fail for the simple reason that the protected activity (filing the EEOC charge in October 2017) occurred after the alleged adverse employment action (placing Plaintiff on S&A leave as of September 2017), Plaintiff withdrew this claim. Defendant's motion for summary judgment is granted with respect to Plaintiff's retaliation claim in Count IV.

## V.   CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [ECF No. 69] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's claims in Counts I-III of the Amended Complaint remain before the Court.

IT IS FURTHER ORDERED that  Count IV of the Amended Complaint are DISMISSED.

IT IS ORDERED.

Date: February 10, 2023             s/Denise Page Hood
                                    DENISE PAGE HOOD
                                    UNITED STATES DISTRICT JUDGE